In the Matter of Gregory R. MEYER, Kathleen M. Meyer d/b/a Superior Auto Sales, Debtor.

**M & I NORTHERN BANK, Plaintiff,**

v.

**Gregory R. MEYER d/b/a Superior Auto Sales, Defendant.**

**Bankruptcy No. 85–03223.
Adv. No. 85–0439.**

United States Bankruptcy Court, E.D. Wisconsin.

July 28, 1988.

James T. Moczdlowski, Milwaukee, Wis., for plaintiff.

Gregory R. Meyer, Fox Point, Wis., debtor pro se.

## MEMORANDUM DECISION

### C.N. CLEVERT, Chief Judge.

The M & I Northern Bank brought this adversary proceeding under § 523(a)(2)(B) and (a)(4) of the Bankruptcy Code, claiming that Gregory R. Meyer obtained an extension, renewal or refinance of credit in the sum of $40,000 by using false personal financial statements. The testimony and documentary evidence presented at trial have caused the court to make the following findings of fact and conclusions of law.

On March 1, 1983, the plaintiff, M & I Northern Bank, agreed to grant Gregory Meyer a $40,000 line of credit to floor plan his used car business known as Superior Auto Sales. The line of credit was secured by a revolving loan and security agreement as well as personal guarantees by Meyer and his wife, Kathleen. The bank agreed to continue this line of credit indefinitely if there was no material change in Meyer's financial status and if he submitted to audits and provided quarterly and annual financial statements.

Meyer executed a series of demand floor plan notes requiring him to pay the bank the total minimum sales price listed for the cars described in each note. This arrangement continued until August 1985, even though the bank had to write Meyer on April 1 and May 8, 1985, demanding that he update his September 30, 1984, financial statement by filing financial statements for the fourth quarter of 1984 and the third quarter of 1985.

On June 1 and June 8, 1985, Meyer prepared and gave the bank identical financial statements dated December 31, 1984, and April 1, 1985, respectively. Both represented that his net worth was $300,230 and that his assets included real estate at 3824 W. Center Street, Milwaukee, Wisconsin, valued at $22,500, home furnishings valued at $25,000, shop equipment and fixtures valued at $15,000, plus other real and personal property.

Meyer executed demand floor plan notes on June 27, July 3, July 26 and August 1, 1985, totalling $32,600. The balances due on all of Meyer's notes stood at $40,000 when he filed his Chapter 7 petition on August 28, 1985.

Meyer testified that he sold the Center Street real estate on March 2, 1984, and that the deed was held by his attorney and subsequently recorded on April 25, 1985. He said he was trying to save his business and if he had shown the bank his financial position, "in real terms," he would have been put out of business immediately. Meyer stated further that the property values he used in his financial statements were determined by adding a normal inflation factor to what he had paid, or by utilizing replacement costs.

John Evans, senior vice-president and bank manager, testified that the bank's decision to extend or continue credit was based on a customer's financial condition; that it was necessary for the bank to receive quarterly and annual financial statements from Meyer in order to detect any unfavorable trend that might be taking place; and that the bank relied on Meyer's financial statements when extending credit. Evans acknowledged that although the bank may not have initially insisted on receiving Meyer's financial statements, it clearly demanded financial statements after he became involved with the account in 1984. He stated also that audits conducted on June 17, 1985, and July 22, 1985, showed that the bank was fully secured by the cars identified in the outstanding floor plan notes. But such was not the case immediately after Meyer filed his bankruptcy petition. At that time, Meyer turned over twenty-four of thirty-nine vehicles he had on the date of bankruptcy, due to post petition sales from which he took the proceeds to pay wages and back taxes. None of the twenty-four vehicles was among the vehicles listed in the June and July audits. Seven of the twenty-four vehicles were of scrap value and the others netted the bank its sales costs of approximately $5,000.

## DISCUSSION

An individual debtor may be denied a discharge of a debt under 11 U.S.C. § 523(a)(2)(B) if the debt resulted from the debtor's use of a materially false financial statement on which the creditor reasonably relied. A debt may be excepted from discharge under 11 U.S.C. § 523(a)(4) if it was the result of fraud or defalcation of the debtor while acting in a fiduciary capacity or the result of embezzlement or larceny. The uncontroverted evidence in this case established that Meyer owed the bank $40,000 when he filed his petition; that Meyer's financial statements for December 31, 1984, and April 30, 1985, did not disclose that he had sold his real estate at 3824 W. Center Street; that Meyer gave the financial statements to the bank believing that if they showed his actual financial position, the bank would stop financing his business

and call its demand notes; that Meyer issued three notes for $32,600 after giving the bank his financial statements; and that the bank's claim against Meyer would have been paid in full if it had called its notes and recovered its collateral on June 17 or July 22, 1985. Thus, the bank proved by clear and convincing evidence that Meyer prepared and gave the bank a writing; that Meyer intended to deceive the bank by falsely representing in his financial statements that he owned Center Street real estate valued at more than half of his bank debt; that the misrepresentation of Meyer's interest in real estate was material because it made Meyer's assets appear to be greater than they were and prevented the bank from realistically assessing its risk; and that the bank reasonably relied on Meyer's financial statements when extending credit in June, July and August of 1985.

Although Meyer questioned whether the bank relied on his financial statements and suggested that the bank did not seriously demand that they be filed, it was nonetheless clear that Meyer was keenly aware that his financial dealings with the bank would abruptly end if his financial statements showed a decreased net worth. Thus, Meyer's arguments were considered meritless with regard to the loans in the summer of 1985.

On the other hand, it is not clear how the bank would calculate its damages. Interest and costs for collecting Meyer's last three notes were not itemized at trial, although they may have been included in the total debt of $40,000 which was stipulated as due to the bank.

In light of the foregoing, there is no reason to extensively discuss the bank's claim under § 523(a)(4). It is sufficient to merely note that the debtor-creditor relationship between Meyer and the bank was not a fiduciary relationship as addressed by the statute. *See Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987).

For the reasons stated, the plaintiff is entitled to judgment against the debtor

pursuant to 11 U.S.C § 523(a)(2)(B) following a hearing on damages.