In re Jerry WOOLUM; Kayetta Woolum, Debtors.

**BANK ONE, LEXINGTON, N.A., Plaintiff–Appellant,**

v.

**Dr. Jerry WOOLUM, Defendant–Appellee.**

No. 92–5107.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1992.

Decided Nov. 4, 1992.

This argument does not provide a basis for reversal under the clearly erroneous standard of review.

Ellen S. Cappellanti (argued), Jackson & Kelly, Charleston, W.Va., Kevin M. McGuire and Katherine A. Adams (briefed), Jackson & Kelly, Lexington, Ky., for plaintiff-appellant.

James Gardner, Lexington, Ky. (argued and briefed), for defendant-appellant.

Before: GUY and BATCHELDER, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This case concerns the dischargeability in bankruptcy of a bank debt. We conclude that the district judge applied the wrong standard of review on appeal from a decision of the bankruptcy court and, accordingly, we reverse the judgment of the district court.

I.

Jerry Woolum, a physician, was not a customer of Bank One. In 1988, he was introduced to the bank's lending officer, Linda Rumpke, by an established customer, real estate developer Rand Rogers. Woolum applied for and received a loan for the purpose of investing in one of Rogers' developments. Before approving the loan, the bank required Woolum to file a financial statement. Over the next two years Bank One made a series of individual and partnership loans to Woolum and during this time he submitted three additional financial statements. In addition the bank required Woolum to produce his individual income tax returns, and the bank obtained

a credit report. The tax returns showed income in excess of $300,000 per year and the credit check was consistent with other information that Woolum furnished.

Things did not go well for Dr. Woolum, however, and he filed a petition in bankruptcy on September 21, 1990. It appears that two judgments against Woolum as guarantor of obligations incurred by a corporation run by his brother-in-law precipitated his resort to bankruptcy. He was also a stockholder in the corporation. At the time of the bankruptcy filing, two of Woolum's promissory notes to Bank One were outstanding. These were a note for $78,000 dated February 1, 1990, renewing an April 22, 1988, note and one for $225,000 dated June 23, 1989. Both loans were made in connection with purchases by Woolum of interests in developments of Rand Rogers. In his Chapter 7 bankruptcy case Woolum sought discharge from his bank debts as well as his obligations as guarantor.

None of Woolum's financial statements listed the two guaranty obligations as debts or liabilities. Both guaranties predated Woolum's first contact with Bank One and both involved substantial amounts. Woolum had signed a guaranty to Owens–Corning Corporation in 1982 that eventually resulted in a claim for more than $388,000, and one to All Weather Insulation Co. that resulted in a judgment against him in excess of $75,000.

## II.

One result of bankruptcy is the discharge of the bankrupt debtor from preexisting financial obligations. Section 523 of the Bankruptcy Code lists circumstances that result in exceptions to the general rule of discharge. Bank One objected to the discharge of Woolum's obligations and filed an adversary proceeding against Woolum, asserting that the debtor's intentional use of false financial statements should bar discharge of his indebtedness to the bank under 11 U.S.C. § 523(a)(2)(B). That section of the Code provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

\* \* \* \* \* \*

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive ...

■ The bankruptcy judge conducted an evidentiary hearing at which Dr. Woolum and Linda Rumpke testified. The parties stipulated that two of the four statutory elements of non-dischargeability were satisfied: the statements were materially false and were given with respect to Dr. Woolum's financial condition. The questions to be decided by the bankruptcy court were whether the bank reasonably relied upon the statements in making the loans and whether the statements were given with intent to deceive. Although Dr. Woolum testified that he relied on assurances of his brother-in-law that the claim by Owens–Corning was "a mistake" and that he had forgotten the guaranty to All Weather Insulation, the bankruptcy judge found that Woolum acted at least with gross recklessness in failing to list these obligations on the financial statements. Because gross recklessness is sufficient to establish an intent to deceive, this finding satisfied the fourth requirement of § 523(a)(2)(B). See *In re Martin*, 761 F.2d 1163, 1167 (6th Cir.1985) ("The standard ... is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied.").

The most vigorously contested issue at all levels has concerned the determination of whether Bank One established existence of the third statutory element of non-dis-

chargeability—reasonable reliance by the lender on the written financial statements. Dr. Woolum has argued, and continues to contend, that the facts show that the bank did not rely on the financial statements. Rather, he asserts that the bank relied on his medical earnings. He points to many "red flags" in the financial statements that should be found to negate reasonable reliance. He contends that the statements were incomplete, at least one was unsigned, and they were "stale" at the time the bank approved and made the loans. He also states that Ms. Rumpke knew that some of the statements were incomplete, that his wife's assets were improperly listed, and his partnership interests were "miscategorized" on some of the statements. Finally, he argues that the bank made the loans to him in order to keep Rand Rogers' business, and that his financial condition was not a factor in the decision to make the loans.

The bank responds that there were no "red flags." While the financial statements were not perfect, the bank asserts the mistakes were of a type commonly found on individual financial statements, and they did not affect the bank's reliance. Ms. Rumpke testified that she went over the statements item by item, examined the tax returns and credit reports and noted Dr. Woolum's professional success and business experience before granting the loans. She stated unequivocally that she did rely on the financial statements in approving Dr. Woolum's requests for loans. The bankruptcy judge found her a credible witness.

Dr. Woolum contends that one "red flag" in particular should be held to negate reliance on the statements. In connection with its efforts to collect on Woolum's guaranty of the corporation's debt, Owens–Corning served a garnishment on Bank One following entry of a default judgment on April 4, 1989. The order of garnishment directed the bank to hold any property or funds of Dr. Woolum in possession of the bank until further orders of the court. Because Woolum had no accounts with the bank, there was nothing in its possession subject to garnishment, and the bank re-

turned the garnishment order to the issuing court with a return of "no accts." Dr. Woolum argues that receipt of the garnishment order put the bank on notice that he had a large liability that was not shown on any of the financial statements, requiring further inquiry by the bank and negating reasonable reliance on the statements.

The bank responds that Ms. Rumpke had no reason to know of the garnishment action. The clerk who received the notice followed the usual practice of checking to determine whether the bank held any funds or property of Dr. Woolum. When she found that the bank had no funds or accounts subject to the order, she again followed normal procedure and returned the notice marked "no accts." Ms. Rumpke testified she had no reason to know of the existence of the order.

### III.

#### A.

The bankruptcy court focused on the financial statement dated April 11, 1989. Just one month before submitting that statement, Dr. Woolum had been served with a summons in the suit by Owens–Corning seeking to recover $388,000 from him. His failure to list the Owens–Corning guaranty as an obligation less than one month after receiving the summons was the clearest example of gross recklessness amounting in law to an intent to deceive. This omission had particular significance because the bank made the unsecured loan for $225,000 just two months later, in June 1989. The bankruptcy judge stated in his oral opinion:

> While there is evidence that there were significant inconsistencies in the financial statements provided by the debtor to the bank, the Court finds the bank reasonably relied upon the financial statements and in particular, the net worth set forth therein in making the loans to the defendant. It seems self-evident that the bank relied upon the April 11, 1989 statement, in particular, and the conduct of the bank, the Court deems to be reasonable under the circumstances.

Based on its findings the bankruptcy court entered judgment denying dischargeability to the two bank loans in question.

## B.

The district court, on appeal, reversed the judgment of the bankruptcy court. The court found that the April 1989 financial statement, which showed a net worth of $1,324,000, contained "significant inaccuracies." In addition to failing completely to disclose the two obligations which he had unconditionally guaranteed, Dr. Woolum had listed only a proportionate share of several joint obligations when he was actually liable for the total indebtedness. On this basis the district court found that the element of intent to deceive was "certainly established." While agreeing with the bankruptcy judge's finding of gross recklessness, the district judge wrote: "Indeed, the record would easily support a finding of actual, deliberate intent to deceive."

With respect to the issue of reliance, the district court determined that it must answer two questions. First, did the bank actually rely on the written statements; second, was its reliance reasonable? The district court held that the first question is purely factual and the bankruptcy court's findings should be reviewed under a clearly erroneous standard. On the other hand, the district court concluded that the question whether any reliance was reasonable "would present, at the least, a mixed question of law and fact requiring a *de novo* review." Proceeding on this basis, the district court agreed that the bank actually relied on the statements in making the June 1989 $225,000 loan, but that the finding of actual reliance in making the February 1990 $78,000 loan was clearly erroneous. Then, upon *de novo* review of the record, the court held that any reliance was "clearly unreasonable."

Among the circumstances that led the district court to this conclusion were the fact that Dr. Woolum did not sign the April 1989 financial statement, that a properly signed statement nine months old at the time of the June 1989 loan was "stale," and

that numerous "red flags" were present to alert the bank that reliance on the statements would be unreasonable. The court referred to blank spaces in the statements, inaccuracies of which Ms. Rumpke was aware, and the garnishment notice. Although the record showed that local banks would not follow a practice of notifying their loan officers when a garnishment was attempted on someone who had no accounts at the bank, the district court held that the garnishment clerk should have informed Ms. Rumpke and that it was unreasonable for her not to inquire about garnishments. The district court did not mention Ms. Rumpke's testimony that the inaccuracies and omissions were common on personal financial statements, that the bank customarily relied on financial statements for up to one year, and that she did in fact rely upon the statements. Also, the district court appears to have overlooked the fact that Dr. Woolum acknowledged that the unsigned statement was his, submitted for the same purposes as the signed ones. The court made no finding on whether or not the bank acted in good faith.

## IV.

### A.

■ The district court committed reversible error in determining that reasonable reliance by a lender is a mixed question of law and fact, and then reviewing the bankruptcy court's decision under a *de novo* standard. We stated in *In re Ledford*, 970 F.2d 1556, 1560 (6th Cir.1992) that "[w]hether a creditor's reliance was reasonable is a factual determination to be made in light of the totality of the circumstances." As a factual determination, this finding must be reviewed under the deferential clearly erroneous standard. Bankruptcy Rule 8013.

Although the district court did not have the benefit of our *Ledford* decision, this court had made clear previously that a finding of reasonable reliance is subject to review under the clearly erroneous standard. We stated in *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986), that the re-

viewing court "must accept the bankruptcy court's findings of fact unless they are clearly erroneous." *Phillips* arose under § 523(a)(2)(A) [1] rather than under § 523(a)(2)(B). Nevertheless, the *Phillips* court adopted a statement from *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985), that "[t]he determination of reasonableness must be made by evaluating all the facts and circumstances of the case." *Phillips*, 804 F.2d at 933. Martin involved a claim of non-dischargeability under § 523(a)(2)(B), as does the present case. Thus, the same standard applies to determinations of the reasonableness of a lender's reliance whether the inquiry is under § 523(a)(2)(A) or (B). The *Phillips* court applied this standard both to the inquiry whether there was intent to deceive and whether the lender's reliance was reasonable. Also, citing *Martin*, this court conducted a clearly erroneous review of reasonableness in *Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490 (6th Cir.1986), another § 523(a)(2)(B) case. There can be no doubt that this is a factual question under established Sixth Circuit law.

Our view of the matter is in accord with holdings of the Courts of Appeals for the Seventh, Ninth and Tenth Circuits. See *Matter of Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989); *In re Lansford*, 822 F.2d 902, 904 (9th Cir.1987); *In re Watson*, 958 F.2d 977, 978 (10th Cir.1992). We decline to follow the holding of the Court of Appeals for the Fifth Circuit in *Matter of Jordan*, 927 F.2d 221, 225 (1991), where that court found that the reasonableness of reliance was a conclusion of law subject to *de novo* review.

### B.

█ Once it has been established that a debtor has furnished a lender a materially false financial statement, the reasonableness requirement of § 523(a)(2)(B) "cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith." *Martin*, 761 F.2d at 1166. A dis-

trict court reviewing a bankruptcy court's determination of reasonable reliance is not "to undertake a subjective evaluation and judgment of a creditor's lending policy and practices." *Matter of Garman*, 643 F.2d 1252, 1256 (7th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981).

We cited and relied upon *Garman* in *Martin*, *Phillips* and *Ledford* as stating the correct approach to determining the reasonable reliance issue.

█ Applying these standards, we conclude that the bankruptcy court's findings that Bank One actually relied upon Dr. Woolum's written financial statements in making the two loans that it seeks to except from discharge and that this reliance was reasonable are not clearly erroneous. There was absolutely no showing that the bank acted in bad faith. *Martin*, 761 F.2d at 1166. In *Knoxville Teachers*, 790 F.2d at 492, n. 2. we adopted the following statement from *Garman*, 643 F.2d at 1258:

> The present issue for the court is simply whether the bankrupt obtained credit, or a renewal, through the creditor's reliance on a materially false financial statement containing information apparently sufficient to obtain an accurate picture of the debtor's financial condition with regard to a reasonable decisional factor in the loan decision, filed by the debtor with the intent to deceive the creditor. The creditor need establish only its reliance in fact, although its claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact. Given this reliance, the court, with the benefit of hindsight, should not base its decision regarding discharge on whether *it* would have extended the loan. (emphasis in original).

The district court appears to have based its incorrect *de novo* determination upon a conclusion that *it* would not have extended the loan. This approach compounded the error of applying the wrong standard of review.

---

1. Section 523(a)(2)(A) withholds discharge from debts for money, etc. obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

The judgment of the district court is reversed. The case is remanded with directions to reinstate the judgment of the bankruptcy court denying dischargeability to the two loans in question.