**In re William J. WALTON, Joyce D. Walton, Debtors.**

**AG CREDIT, ACA, Plaintiff,**

**v.**

**William J. WALTON, et al., Defendants.**

**Bankruptcy No. 92–30440.
Adv. No. 92–3146.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 8, 1993.

John J. Hunter, Jr., Toledo, OH, for plaintiff.

### OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on Ag Credit, ACA's ("Ag–Credit") motion for

summary judgment against William and Joyce Walton ("Debtors") for denial of a discharge under 11 U.S.C. § 727(a)(2)(A) for an alleged fraudulent transfer prepetition and under 11 U.S.C. § 727(a)(3) for failure to keep adequate records. Ag Credit further seeks to have this Court declare a $700,000 loan from Ag Credit to Debtors nondischargeable under 11 U.S.C. § 523(a)(2)(B) because Debtors allegedly made a false financial statement with the intent to deceive Ag–Credit. This Court finds that Ag Credit's motion for summary judgment is not well taken and should be denied.

## FACTS

### Denial of Discharge Under 11 U.S.C. § 727(a)(2)(A)

Ag Credit argues that two agreements which the Debtors purportedly entered into were fraudulent transfers.

Ag Credit has provided this Court with a copy of an agreement between Debtors and Meijer Properties, Inc. ("Meijer") which was filed as an exhibit in Stephan Walton's state court action against Meijer, 92–CV–7718. *See* Plaintiff's Exhibit 2, at p. 7–11 (the "Meijer Agreement"). Meijer agreed to pay Debtors $75,000 to abandon their appeal from a state court order confirming a foreclosure proceeding. *See* Plaintiff's Exhibit 2, at p. 7.

Ag Credit has further provided this Court with a copy of an agreement apparently executed subsequent to the Meijer Agreement. *See* Plaintiff's Exhibit 2, at p. 12–13. This agreement purports to transfer Debtors' interest in the Meijer Agreement to "Walton Lease Holders" in exchange for an agreement by "Walton Lease Holders" not to pursue further litigation against Meijer (the "Walton Agreement"). "Walton Lease Holders" is comprised of Debtors, Stephan Walton, Jonathan Walton and Frederick Walton. Debtors state in the Walton Agreement that the funds they were personally entitled to under the Meijer Agreement were actually the property of "Walton Lease Holders".

### Denial of Discharge Under 11 U.S.C. § 727(a)(3)

Ag Credit states that since Debtors were not "simple farmers", they were required to keep substantial records. Ag Credit has provided this Court with a financial statement of Joyce and William Walton dated January 18, 1984 listing assets of $6,042,000 and liabilities of $2,464,500. Further, a comparative statement of farm income and expense provided to Ag–Credit's predecessor by the Debtors lists "Total Adjusted Farm Income" in excess of $425,000 each year from 1980–1982. *See* Affidavit of Christopher Rose, Senior Vice–President of Ag Credit, Plaintiff's Exhibit 4B and Exhibit 4D.

Debtors have not conducted this farm business in recent years. This Court notes that in William Walton's prior Chapter 12 filing on December 11, 1989 which was dismissed for bad faith, this Court observed that "at his § 341 hearing [William Walton] stated he own[ed] no farm equipment, that he ha[d] no income since 1987 and that he ha[d] filed no income tax return since 1985". *See In re Walton*, 116 B.R. 536 (Bankr.N.D.Ohio 1990). In dismissing William and Joyce Walton's chapter 11 bankruptcy for cause in December of 1987, this Court stated that Debtors "ha[d] no income" and "no viable business to protect". *Walton v. Federal Land Bank (In re Walton)*, 80 B.R. 870, 874 (Bankr. N.D.Ohio 1987).

Ag Credit also points to a number of alleged financial transactions by Debtors as indicating that Debtors have not kept adequate records.

Ag Credit has alleged that Debtors' "dispossessed themselves of" certain assets including race horses, farm equipment and an airplane which were listed on Debtors' 1984 financial statements.

Debtors have admitted that Mr. Walton made airplane trips in 1991 "for a consultation on property evaluation and feasibility". *See* "Contra Response To Summary Judgement" filed May 4, 1993 at p. 2. These trips were not disclosed by Mr. Walton when he filed for bankruptcy.

Ag Credit asserts that Debtors failed to provide this Court with information for a $125,000 payment made by Joyce Walton to purchase the Debtors' homestead from Ag Credit during Debtors' bankruptcy. Debtors allegedly transferred the property to another person immediately after this purchase. Though admitting in their "Contra Response To Summary Judgement" that there was a "sale" to Joyce Walton and that the property was subsequently transferred to a "financing entity", Debtors state that they "provided absolutely no funds to purchase said property and own no interest in said property". "Contra Response To Summary Judgement" at p. 2. The Debtors are still living in the homestead. *See* "Contra Response To Summary Judgement" at p. 2.

**Exception of Debt From Discharge Under 11 U.S.C. § 523(a)(2)(B)**

Ag-Credit also asserts that a $700,000 loan to Debtors should be declared nondischargeable because Debtors listed an apartment complex valued at $750,000, which Debtors admit that they never owned, on their financial statements. These financial statements were provided by Debtors to Ag Credit's predecessor in 1984. *See* Affidavit of Christopher Rose, Vice–President of Ag Credit, Plaintiff's Exhibit 4B.

## DISCUSSION

**Denial of Discharge Under 11 U.S.C. 727(a)(2)(A)**

Ag Credit is not entitled to summary judgment for alleged fraudulent transfers by Debtors because Ag Credit has not provided this Court with any evidence regarding these purported transfers.

A court will deny a debtor a discharge under 11 U.S.C. § 727(a) where:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of filing of the petition;

However, the information submitted by Ag Credit of alleged fraudulent transfers made by the Debtors will not be considered by this Court because this information was not attached to an appropriate affidavit.

■ This Court will not consider the Meijer Agreement in deciding this motion for summary judgment because, as the Sixth Circuit observed in *Investors Credit Corp. v. Batie (In re Batie)*, "documents ... [that] are not part of the 'pleadings, depositions, answers to interrogatories, and admissions on file,' can only enter the record as attachments to an appropriate affidavit to constitute a basis for summary judgment". *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 89 (6th Cir.1993).

Similarly, this Court will not consider the Walton Agreement on this motion for summary judgment because the Walton Agreement was not entered into the record as an attachment to an affidavit.

Further, there are genuine issues of material fact which cannot be resolved on this motion for summary judgment even if the Meijer Agreement and the Walton Agreement are considered.

The Meijer agreement was within one year before the date of filing of Joyce Walton's bankruptcy petition on December 30, 1991. However, the Meijer agreement was not within one year before the date of filing of William Walton's bankruptcy petition on February 10, 1992.

Though the Walton Agreement was apparently executed following the Meijer Agreement, Ag Credit has not provided this Court with enough information to determine if the Walton Agreement was made within one year before the date of filing of the Debtors' bankruptcy petitions.

Despite Ag Credit's assertion that there was inadequate consideration or no consideration for the Walton Agreement, there is arguably a genuine issue of material fact as to whether the "Walton boys" provided adequate consideration to Debtors. In ad-

dition to agreeing not to pursue an appeal of the confirmation of the foreclosure sale on the subject property in the Meijer Agreement, the Debtors also agreed to obtain the release of a junior lien held by the Wheatley Company in the property. *See* Plaintiff's Exhibit 3, at p. 2, para. 4. The "Walton boys" allegedly hold an interest in this company.

### Denial of Discharge Under 11 U.S.C. § 727(a)(3)

Ag Credit is not entitled to summary judgment against Debtors for alleged inadequate recordkeeping by Debtors because Ag Credit has not provided this Court with sufficient evidence to indicate that Debtors should be required to produce substantial records.

█  A court must perform a two-part analysis under 11 U.S.C. § 727(a)(3). The Court must first determine if the debtor failed to keep or preserve records. If the Court determines that the Debtor's records were inadequate, "the [d]ebtor may nonetheless be entitled to discharge if he can justify his failure to keep or preserve the records". *Blockman v. Becker (In re Blockman)*, 74 B.R. 233, 235 (Bankr. E.D.Tenn.1987).

█  Deciding whether a debtor's records are adequate is necessarily a case-by-case analysis. *James v. McCoy (In re McCoy)*, 114 B.R. 489 (Bankr.S.D.Ohio 1990). "[T]he debtor's intent is not an issue." *Singer Sewing Co. v. Harmon (In re Harmon)*, 1992 WL 13624 (W.D.Tenn. Jan. 10, 1992) (citing *In re Weiss*, 132 B.R. 588 (Bankr.E.D.Ark.1991)). The court in *James* noted that this provision does not operate "in a draconian fashion to require maintenance, preservation, and production of comprehensive records of every minute detail of a debtor's financial and business activity as a precondition to a grant of discharge". *James*, 114 B.R. at 500. The duty to keep records "extends to all material business transactions of the debtor, including those pertaining to another's property". *Office of Comptroller General of Republic of Bolivia on Behalf of General Command of Bolivian Air Force v. Tract-*

*man*, 107 B.R. 24, 26 (S.D.N.Y.1989). In *U.S. v. Trogdon (In re Trogdon)*, the court set forth a test for determining the amount of information that the debtor must provide. *U.S. v. Trogdon (In re Trogdon)*, 111 B.R. 655 (Bankr.N.D.Ohio 1990). These factors include the debtor's:

(a) occupation

(b) financial structure

(c) education

(d) experience

(e) sophistication

(f) other factors which the court may look to in the interest of justice

*Trogdon*, 111 B.R. at 658. In *Trogdon*, the court held that denial of a discharge was warranted where the debtor, who was intelligent, college educated and maintained the family finances, provided no documentation for a number of sizeable transactions. *Trogdon*, 111 B.R. at 655. The court noted that while the debtor's conjecture on certain expenditures was "plausible", it was not sufficient to explain his loss of assets. *Trogdon*, 111 B.R. at 655. *See also National City Bank, Marion v. McNamara (In re McNamara)*, 89 B.R. 648 (Bankr. N.D.Ohio 1988) (denial of discharge warranted because debtor failed to keep records of disposition of assets including equipment and livestock and did not have any records of acquisition or sale of one-half interest in condominium).

In applying the *Trogdon* test for determining how much information a debtor must provide, the fact that Debtors had a complex financial structure at one time militates in favor of holding Debtors to a higher standard of recordkeeping.

█  Despite this fact, several cases have held a debtor who formerly ran a sophisticated business to a lesser standard of recordkeeping when the debtor has abandoned the former business. *See Grange Mutual Insurance Co. v. Benningfield (In re Benningfield)*, 109 B.R. 291 (holding debtor who was formerly a sophisticated businessperson to a lesser standard of recordkeeping where debtor had medical problems arising from an automobile accident that limited his ability to earn income);

*Blockman,* 74 B.R. at 236 (holding that debtor who abandoned his home construction business was "held to the same standard as an ordinary consumer debtor" and was not required to keep a checking account). The fact that Debtors have not conducted their farm business recently supports holding Debtors to a lesser standard of recordkeeping.

■ In addition to Debtors' former financial position, Ag Credit has alleged that Debtors engaged in a number of financial transactions which required documentation.

Debtors' failure to provide a detailed account of the disposition of assets listed on a 1984 financial statement including race horses, farm equipment and an airplane does not provide strong support for requiring Debtors to produce substantial business records.

Ag Credit's argument that Debtors are required to provide substantial business records because of airplane trips by Mr. Walton is not persuasive. Ag Credit has not provided this Court with any information with which to gauge the materiality of these business transactions. Information that Mr. Walton made two undisclosed business trips, absent additional information, does not warrant a finding that Mr. Walton was required to keep detailed records of his business transactions.

Further, Ag Credit has failed to provide evidence of an alleged purchase by Joyce Walton of Debtors' homestead to support its allegations.

Although Ag Credit has made strong allegations of undocumented transactions by the Debtors and has provided this Court with some evidence of these transactions, Ag Credit has not provided enough information for this Court to deny Debtors a discharge at this time.

■ The second part of an analysis under 11 U.S.C. § 727(a)(3) examines whether the debtor's failure to keep records is justified in the circumstances. The court in *Singer Sewing Co.* stated that " '[v]ague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory' ".

*Singer Sewing Co.,* 1992 WL 13624 at *6 (quoting *In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984)). The Debtors' financial records are minimal at best. Debtors have stated in their "Answer To Complaint, And Demand For Time To Counter Complain" that "Debtors do not keep records" and that "Debtors have had no financial affairs in the past year". *See* "Answer To Complaint, And Demand For Time To Counter Complain" filed June 2, 1992 at p. 1. If Ag Credit provides sufficient evidence of transactions by the Debtors, Debtors may be denied a discharge for their failure to maintain a minimal level of documentation.

### Exception of Debt From Discharge Under 11 U.S.C. § 523(a)(2)(B)

Ag Credit should not be granted summary judgment for an allegedly nondischargeable loan made to Debtors because a genuine issue of material fact exists with regard to whether Ag Credit had knowledge that Debtors did not own an apartment complex which was listed by Debtors as an asset on their financial statements.

Ag Credit argues that a $700,000 loan to Debtors should be declared nondischargeable because Debtors listed an apartment complex valued at $750,000, which Debtors admit that they never owned, on their financial statements.

Section 523(a)(2)(B) excepts from discharge a debt obtained by:

use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit, reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive

Ag Credit has provided a financial statement of William and Joyce Walton for January, 1984 which was used to obtain a $700,000 loan from Ag Credit's predecessor. *See* Affidavit of Christopher Rose, Plaintiff's Exhibit 4, 4A and 4B.

This financial statement constitutes a statement in writing respecting the Debtors' financial condition.

The alleged misstatement represented 12.4% of Debtors total assets of $6,042,000 listed on the financial statement. Such a misstatement appears to be material.

■ The Sixth Circuit has held that the requisite "intent to deceive" by the debtor can be established by showing that the debtor "is reckless when submitting financial statements that he knows are not true". *Investors Credit Corp.*, 995 F.2d at 90. The fact that Debtors listed the apartment complex on their financial statements despite the fact that Debtors only "believe[d] the final details could be worked out and the finalization of the agreement which would result in the ownership" would occur displays the degree of gross recklessness which warrants denial of a discharge under 11 U.S.C. § 523(a)(2)(B).

■ However, a material issue of fact does exist as to whether Ag Credit reasonably relied on Debtors financial statements. Reasonable reliance by the lending institution " 'cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith' ". *Bank One, Lexington v. Woolum (In re Woolum)*, 979 F.2d 71, 75 (6th Cir.1992) (quoting *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985)). "The creditor need establish only its reliance in fact, although its claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact." *Bank One, Lexington*, 979 F.2d at 76. Further, the court in *Bank One, Lexington* made clear that a court "should not base its decision regarding discharge on whether it would have extended the loan". *Bank One, Lexington*, 979 F.2d at 76. Debtors have provided the affidavit of William Walton which states that Ag Credit's predecessor had knowledge that the Debtors did not own the apartment complex. *See* Affidavit of William Walton dated May 3, 1993. If Ag Credit's predecessor had knowledge that Debtors did not own the apartment complex, this knowledge would negate reasonable reliance by Ag Credit. Therefore, there is a genuine issue of material fact that this Court cannot determine on this motion for summary judgment.

## CONCLUSION

Ag Credit has not provided this Court with any admissable evidence regarding Debtors' alleged fraudulent transfers. Additionally, Ag Credit has not provided this Court with sufficient evidence to indicate that Debtors are required to produce substantial business records. Further, a genuine issue of material fact exists with regard to whether Ag Credit had knowledge that Debtors did not own an apartment complex which was listed as an asset on Debtors' financial statements. Therefore, Ag Credit is not entitled to summary judgment on these issues.

In light of the foregoing, it is hereby

ORDERED that Ag Credit, ACA's motion for summary judgment be, and hereby is, denied. It is further

ORDERED that a trial be held on Wednesday November 17, 1993, at 10:00 o'clock A.M., Courtroom No. 1, Room 103, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.