In re Lynn Andrew WARNER,
Jr., Debtor.

FIRST TENNESSEE BANK NATIONAL
ASSOCIATION, Plaintiff,

v.

Lynn Andrew WARNER, Jr., Defendant.

Bankruptcy No. 91–32570–D.
Adv. No. 92–1326.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 16, 1994.

Sean Haynes, Heiskell, Donelson, Bearman, Adams, Williams & Caldwell, Memphis, TN, for plaintiff.

Norman Hagemeyer, Memphis, TN, for debtor.

**MEMORANDUM OPINION AND ORDER GRANTING FIRST TENNESSEE BANK NATIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT**

BERNICE BOUIE DONALD,
Bankruptcy Judge.

This core proceeding [1] came on for hearing on motion of First Tennessee Bank National Association ("First Tennessee") seeking summary judgment on its action under 11 U.S.C. § 523(a)(2)(B) against Defendant Lynn Andrew Warner, Jr. ("Defendant"). As basis for its motion, First Tennessee avers that relative to certain loans which defendant obtained from First Tennessee there is no genuine issue of material fact as to the elements of its 11 U.S.C. § 523(a)(2)(B) action. First Tennessee contends that Defendant obtained extensions of credit from First Tennessee by:

(i) use of a statement in writing that was materially false;

(ii) respecting Defendant's financial condition;

(iii) on which First Tennessee reasonably relied; and

(iv) that Defendant caused to be made or published with intent to deceive.

Further, First Tennessee argues that because no genuine issue of material fact exists, First Tennessee is entitled to judgment as a matter of law.

First Tennessee relies upon its Memorandum of Law (and exhibits); the affidavit of John Gauldin (and exhibits); the transcript of the May 13, 1992 examination of Lynn A. Warner, Jr., M.D., pursuant to F.R.B.P. 2004; Plaintiff's First Set of Requests for Admissions (propounded on Defendant's counsel September 1, 1993); the entire record in this adversary proceeding; and the entire record in the main case file, all of which the court properly considered. *See* F.R.B.P. 7056(c).

The Defendant contends that the issue is not ripe for summary judgment because there are material factual issues which require an evidentiary hearing for determination, such as whether First Tennessee reasonably relied on Defendant's financial statement.

The narrow issue for judicial determination is whether any genuine dispute exists as to any material fact, such that summary judgment would be improper.

1. 28 U.S.C. § 157(b)(2)(I).

### Summary of Relevant Facts

In October 1987, Defendant sought a loan from First Tennessee for Investors Business Network, Inc. ("I.B.N."). First Tennessee and Defendant had a prior business relationship wherein Defendant borrowed and repaid other loans. First Tennessee allegedly made the loan based on Defendant's personal guarantee that the loan would be repaid, and based upon financial information showing Defendant to be an "extremely safe credit risk." Defendant provided First Tennessee with a December 1986 financial statement which showed Defendant with a net worth of $1,596,400. First Tennessee was making a loan of $50,000. (See Affidavit of John Gauldin). Subsequent to the October 1987 loan, Defendant obtained three other loans on behalf of or in connection with I.B.N.

Over a four-year period, Defendant serviced the loans and First Tennessee extended the maturity dates on the respective loans. As a condition of the loan extensions, Defendant submitted new financial statements. (See Affidavit of John Gauldin).

In its motion, First Tennessee states that in the mid–1980's, Defendant's brother experienced financial difficulties and had trouble making payments on a loan (the "farm loan") obtained from First Tennessee. On February 20, 1985, Defendant agreed to become a maker on the farm loan, and obligated himself for the entire balance owed. Over the next six years, the farm loan was sufficiently serviced, and First Tennessee extended the maturity date several times. Plaintiff further contends that as with the I.B.N. indebtedness, First Tennessee based its decisions to extend maturity dates on the farm loan on Defendant's net worth as indicated in Defendant's current financial statements. First Tennessee maintains that it always considered Defendant's net worth a significant factor.

In response to the assertions of First Tennessee, Defendant proffers the following facts which are taken largely from Defendant's Response to Plaintiff's Motion for Summary Judgment.

On August 29, 1991, the Plaintiff allowed I.B.N. to sign a $102,662.58 promissory note. The Defendant guaranteed this note. David Hurt, Defendant's business partner, also guaranteed this note. The Defendant signed a new security agreement on 666 shares of the Dyersburg Doctors Building, Inc. stock. This promissory note represented a consolidation of four prior loans. The first loan was dated October 15, 1987, and was a line of credit to I.B.N. with a maximum indebtedness of $50,000. David Hurt and the Defendant guaranteed this note, and the Defendant signed a security agreement of 666 shares of the Dyersburg Doctors Building, Inc. stock which he owned. (sic)

The second loan was on December 30, 1987, and was again a loan to I.B.N. The Motion for Summary Judgment filed by the Plaintiff does not allude to it or contain a copy of any guarantees signed by the Defendant as to this loan to I.B.N.

The third loan was a loan directly to the Defendant and to David Hurt in the amount of $25,000.

The fourth loan was a loan of $10,000 dated May 12, 1988, directly to the Defendant and to David Hurt to invest in I.B.N.

The affidavit of John Gauldin, a regional president of First Tennessee Bank National Association, Dyersburg, Tennessee, which is attached to the Plaintiff's Motion for Summary Judgment, states at page 2 that "until defendant's default in 1991, defendant never defaulted on any loans obtained form First Tennessee." On the same page, Mr. Gauldin sets out the fact that the Defendant had obtained and repaid to the Plaintiff $202,-630.27 in various loans made between 1981 and 1989. This is an eight-year time period and the average amount of the loans made and repaid is $25,328.78 per year.

The issue for judicial determination is whether a genuine issue of material fact as to whether plaintiff relied on defendant's prior history with plaintiff or on defendant's allegedly false financial statement.

### DISCUSSION

Summary judgment is to be granted in favor of a moving party when after consideration of the evidence presented by the pleadings, affidavits, answers to interrog-

atories and depositions, and in a light most favorable to the non-moving party, there remain no genuine issues of material fact. F.R.B.P. 7056(c).[2] The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989).

■ The heart of a summary judgment motion is whether a genuine issue as to any material fact exists such that the movant is entitled to a judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989). *Federal Practice and Procedure:* Civil 2d § 2725. Thus, if the only issues for the court's determination are questions of law, summary judgment is appropriate. *Bradford, supra; Koepfle v. Garavaglia*, 200 F.2d 191 (6th Cir.1952).

■ A fact is material if it tends to resolve any of the issues that have been properly raised by the parties. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir.1979). Thus, material facts under rule 56(c) are those that constitute a legal defense, or whose existence or nonexistence affect the outcome. *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). *SEC v. Seaboard Corp.*, 677 F.2d 1301 (9th Cir.1982).

■ Once material facts are determined, the court must ascertain if there are genuine issues concerning these facts. Wright, Miller, & Kane, *Federal Practice and Procedures:* Civil 2d. § 2725 at 95. The court is faced with an intricate task of piercing the pleading to determine these issues. Summary judgment is not warranted when there is room for clarity or any doubt as to the existence of all pertinent facts being before the court. *Id.* at 100.

2. F.R.B.P. 7056(c) states:
"... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, togeth-

Many courts determine motions for summary judgment without following any prescribed formula. Wright, Miller, & Kane, *Federal Practice and Procedure:* Civil 2d § 2725 supp. at 16. Yet, courts may review the existence of factual inferences as a pertinent consideration in determining a motion for summary judgment. *See, Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294 (11th Cir.1983).

In *In re Suburban Motor Freight, Inc.*, 124 B.R. 984 (Bankr.S.D.Ohio 1990), the court noted that courts should look critically at summary judgment motions. The court opined:

"Scholars and courts are in agreement that a 'new era' in summary judgments dawned by virtue of the Court's opinions in these cases." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989); *Gilbert v. New England Mutual Life Ins. Co., (In re Worl )*, 111 B.R. 665 (Bankr.S.D.Ohio 1990).

On the whole, these decisions reflect a salutary return to the original purpose of summary judgment. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact had tended to emasculate summary judgment as an effective procedural device.

The Supreme Court's rulings evidence its desire to remove artificial barriers, i.e., the hint of a genuine issue of material fact, from a court's ability and willingness to grant summary judgment in appropriate cases.

*Id.* (Citations omitted in part)

■ The initial burden of proof is on the party seeking summary judgment to establish, in light of the pleadings, depositions, answers to interrogatories, admissions and affidavits, the absence of a genuine issue of material fact. *In re Suburban Motor Freight, Inc.*, 124 B.R. at 993. However, the ultimate burden of demonstrating existence of a genuine issue of material fact lies with the non-moving party. *Id.*, citing *Celotex*

er with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Fed.Rule Civ.Proc. 56(e) (emphasis added) ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 at 586–87, 106 S.Ct. 1348 at 1355–56, 89 L.Ed.2d 538 (1986); *See First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

The *Suburban Motor Freight, supra,* reviewed the prevailing law in the Circuit and reiterated certain instructive principles for courts considering summary judgment motions. The following governing principles were set forth by the Sixth Circuit in *Street v. J.C. Bradford & Co.,* based on a review of *Anderson, Celotex,* and *Matsushita.*

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Case involving state-of-mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the *respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.* (Emphasis added)

5. A court should apply a federal directed-verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed-verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e. *the respondent must adduce more than a scintilla of evidence to overcome the motion.* (Emphasis added)

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must *"present affirmative evidence in order to defeat a properly supported motion for summary judgment."* (Emphasis added)

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Section 523(a)(2)(B) of the Bankruptcy Code provides that a debt will be declared nondischargeable where such debt is as follows:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false:

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

There is no dispute about the fact that Defendant received "money, ... extension, renewal [and] refinancing of credit from First Tennessee by use of a statement in writing." Defendant prepared and executed certain loan documents and submitted personal financial statements.

### Materially False Financial Statements

■ Defendant's financial statements were indisputably inaccurate. Based on the entire record, the Court finds that the financial statements were materially false. Debtor's financial statement listed certain stock represented to be Defendant's property, which property belonged to Defendant's wife. This information was not disclosed to First Tennessee. (See 2004 Transcript p. 44 II 21–25). Defendant's financial statement listed household furnishing at a value of $60,000 from 1987–1990 and listed those same furnishings with a value of $30,000 on the 1991 Bankruptcy Schedules. The Court is mindful that valuations may differ based on the purposes of those valuations. See, 11 U.S.C. § 506(a). Defendant listed a value for the business I.B.N. at $200,000–$280,000 on the financial statements which Defendant asserts was the amount of his investment and assigned no value on the bankruptcy schedules. There was no plausible explanation posited for the discrepancies.

Moreover, Defendant misrepresented his equity interest in certain partnerships, including Bahamas Box Corp. Defendant failed to disclose the existence of a lien on his principal residence in favor of First Citizens Bank (Exh. 6), and failed to disclose the existence of a loan from his Pension and Profit Sharing Plan. (Transcript p. 51, II 19–25; p. 52, II 1–5).

The following chart represents liabilities reflected in Defendant's financial statements submitted to First Tennessee:

### CHART 1

| Financial Statement | Amount Listed | Referenced as in the Financial Statement | Obligation it Relates | Date of Obligation |
| --- | --- | --- | --- | --- |
| December, 1986 | $ 94,000 | Notes Payable—First Citizens Bank | Notes No. 54519 First Citizens Bank | 04/08/85 |
| December, 1987 | $ 75,000 | Notes Payable—First Citizens Bank | Note No. 54519 First Citizens Bank | 04/08/85 |
| | $ 50,000 | Miscellaneous Loans | Credit Card Debt | — |
| October, 1988 | $ 57,000 | Notes Payable—First Citizens Bank | Note No. 54519 First Citizens Bank | 04/08/85 |
| | $ 50,000 | Miscellaneous Loans | Credit Card Debt | — |
| December, 1989 | $ 34,600 | Mortgage Payable—Residence | Note No. 54519 First Citizens Bank | 04/08/85 |
| | $ 50,000 | Miscellaneous Loans (Credit Cards, etc.) | Credit Card Debt | — |
| October, 1990 | $114,922.77 | Mortgage Payable—Residence | Note No. 65818 First Citizens National Bank (substituted for Note No. 54519) | 12/22/89 |
| | $ 50,000 | Miscellaneous Loans (Credit Cards, etc.) | Credit Card Debt | — |

(The Chart was compiled from records subpoenaed from First Citizens National Bank (Exhibit 3)). Defendant's Schedule F shows approximately $70,000 of credit and debt.

In addition to the items disclosed, there were numerous liabilities which were not disclosed as represented in the following Tables.[3]

## TABLE 1

### LIABILITIES THAT DEFENDANT FAILED TO REFLECT

| Financial Statement | Creditor | Date | Type | Amount |
|---|---|---|---|---|
| December, 1986 | Jefferson Smurfit Corp. | 03/19/86 | Guaranty | $ 60,771.83[4] |
| | Profit Sharing Plan | 11/26/82 | Loan | $ 25,000.00[5] |
| | Profit Sharing Plan | 02/04/83 | Loan | $ 25,000.00[6] |
| | | | SUBTOTAL | $110,771.83 |
| December, 1987 | Same obligations not reported on December, 1986 Financial Statement. | | | |
| October, 1988 | First Citizens Nat'l Bank | 01/26/88 | Guaranty | $200,000.00[7] |
| | | | SUBTOTAL | $200,000.00 |
| December, 1989 | Security State Bank | 10/20/88 | Loan | $ 50,000.00[8] |
| | Bankruptcy Estate—*In re E.L. Garner* | 1988 | Lawsuit | $ 30,000.00[9] |
| | NBC Bank | 02/28/89 | Guaranty | $533,250.00[10] |
| | First Citizens Nat'l Bank | 03/15/89 | Guaranty | $398,800.00[11] |
| | NBC Bank | 05/12/89 | Loan | $ 18,050.00[12] |
| | | | SUBTOTAL | $850,100.00 |

3. (The information is taken verbatim from First Tennessee's Memorandum of Law for convenience; however, the Court finds that all of the information is fully supported by the record). References to Exhibits in the Chart and Tables pertain to Exhibits attached to First Tennessee's Memorandum of Law.

4. See Exhibit 4, copies of two guaranties executed by Defendant and a consent judgment taken against him by Jefferson Smurfit.

5. During his 2004 Examination, Defendant admitted having borrowed those funds. Exhibit 1 at 81–82. *See also* collective Exhibit 5 excerpts from the books and records of Defendant's Profit Sharing Plan evidencing the indebtedness. These copies are part of the record in AmSouth Financial Corporation's Adversary Proceeding against Lynn Andrew Warner, Adv.Pro. No. 92–0466.

6. During his 2004 Examination, Defendant admitted having borrowed those funds. Exhibit 1 at 81–82. *See also,* collective Exhibit 5 excerpts from the books and records of Defendant's Profit Sharing Plan evidencing the indebtedness. These copies are part of the record in AmSouth Financial Corporation's Adversary Proceeding against Lynn Andrew Warner, Adv.Pro. No. 92–0466.

7. Defendant executed a guaranty in favor of First Citizens National Bank on January 26, 1988, obligating Defendant for a $200,000 line of credit. The guaranty secured the line of credit that First Tennessee granted to a corporation owned by Defendant (and others), American Nursing Resources, Inc. ("ANR"). *See* Exhibit 6, a copy of records subpoenaed from First Citizens National Bank indicating the account status of the ANR obligation.

8. Defendant failed to reflect that, on October 20, 1988, Defendant borrowed $50,000 from Security State Bank. Exhibit 7 attached hereto is a copy of a Promissory Note by which that obligation was incurred.

9. Defendant failed to reflect that, at some point in 1988, the bankruptcy trustee in the case of *In re E.L. Garner* sued him individually for having taken a preferential payment. Although Defendant failed to include this contingent claim, Defendant ultimately conceded his liability. *See* Exhibit 8, a copy of the consent judgment (attached to the proof of claim previously filed with the Court) executed on Defendant's behalf which evidences this unreported liability of $30,000.

10. Defendant failed to include a guaranty in favor of NBC Bank in the amount of $553,250 incurred February 28, 1989, relating to his investment in BIP, Ltd. See Exhibit 9, a copy of the guaranty. Incidentally, to date, Defendant has failed to list this liability (and corresponding asset, if any) in his bankruptcy schedules.

11. Defendant failed to reflect that, on February 15, 1989, Defendant increased his obligation to First Citizens National Bank relating to his ANR line of credit from $200,000 to $398,800. Collective Exhibit 10 consists of the note executed by ANR and Defendant's related Guaranty Agreement.

12. Defendant failed to reflect an $18,050 loan from NBC Bank obtained May 12, 1989. Collective Exhibit 11 evidences the original obligation under a Note and Security Agreement dated May 12, 1989, and a second Note and Security Agreement dated November 18, 1989, by which the loan was apparently refinanced.

TABLE 1

## LIABILITIES THAT DEFENDANT FAILED TO REFLECT

| Financial Statement | Creditor | Date | Type | Amount |
|---|---|---|---|---|
| October, 1990 | NBC Bank | 02/12/90 | Loan | $ 50,100.00[13] |
| | AmSouth Financial Corp. | 03/20/90 | Guaranty | $450,000.00[14] |
| | First Citizens Nat'l Bank | 07/16/90 | Loan | $ 15,134.07[15] |
| | | | SUBTOTAL | $490,100.00 |

TABLE 2

## CUMULATIVE AMOUNTS DEFENDANT FAILED TO REFLECT

| Financial Statement | Liabilities and Contingent Liabilities Reflected on the Financial Statements | Total Liabilities and Contingent Liabilities Not Reflected Between Date of Previous Financial Statement and This One | Cumulative Total Defendant Failed to Reflect as of the Date of this Financial Statement |
|---|---|---|---|
| December, 1986 | $150,600 | — | $ 110,771.83 |
| December, 1987 | $183,600 | — | $ 110,771.83 |
| October, 1988 | $146,600 | $200,000 | $ 310,771.83 |
| December, 1989 | $120,600 | $850,100 | $1,160,871.83 |
| October, 1990 | $193,922.77 | $490,100 | $1,650,971.83 |

Thus based on the magnitude and numerosity of the omissions of significant liabilities from the financial statement, the Court finds the statement to be materially false. Additionally, Defendant admitted in his Answer that the financial statements were materially false.

Plaintiff's complaint at paragraph 20 provides:

[20] Prior to August 29, 1991, the most recent financial statement which Defendant had provided to First Tennessee indicated that Defendant's assets exceeded his liabilities by $2,767,110.30. In fact, the amount by which Defendant's assets exceeded his liabilities, if such was the case at all, was substantially less than the representation made in Defendant's financial statement and constituted a material misrepresentation of Defendant's financial condition. First Tennessee believes this to be true of the 1987, 1988, 1989, and 1990 financial statements which Defendant provided to First Tennessee and upon which First Tennessee relied in granting and/or extending the loans.

Defendant answered:

[12] Answering Paragraph 20 of the Complaint, the defendant admits the averments of the first sentence of that para-

13. Defendant failed to reflect that, on February 12, 1990, Defendant executed a note in favor of NBC Bank in the amount of $50,100. Exhibit 12 is a copy of the Note and Security Agreement by which Defendant incurred this obligation.

14. Defendant failed to reflect that, on March 20, 1990, Defendant executed a guaranty in favor of AmSouth Financial Corp. in the amount of $450,000. Collective Exhibit 13 are copies of AmSouth's Proof of Claim (previously filed with the Court) to which were attached the note executed by D.W.A. Partnership and Defendant's guaranty of the note.

15. Defendant failed to reflect that, on July 16, 1990, Defendant executed a note in favor of First Citizens in the amount of $15,134.07 relating to a business that Defendant operated as a sole proprietorship, the "Dr. L.A. Warner, Jr. Personal Injury Clinic." Exhibit 14 is a copy of the note by which Defendant obligated himself for this debt.

graph. The defendant admits the balance of that paragraph.

Thus the Court finds based on the compelling evidence in the records and based on the absence of any controverting evidence by Defendant where Defendant has had ample time to conduct discovery and produce evidence, Defendant's financial statements were materially false.

First, Tennessee relied upon Defendant's October, 1990 Financial Statements when it negotiated new payment terms with Defendant in August, 1991. Gauldin Affidavit at 6–7. Tables 1 and 2 show that the October, 1990 Financial Statement was the one that most dramatically understated Defendant's financial condition approximately by $1,670,-971.83.

As a matter of law, material misrepresentation occurs when the amount of unreported liabilities equals at least 35% of asserted net worth. *See, Bank One v. Woolum (In re Woolum)* 979 F.2d 71 (6th Cir.1992). The *Woolum* case is similar to the case at bar. In *Woolum,* the defendant had asserted a net worth of $1,324,000. *Id.* at 75. The Defendant, however, had failed to report $463,000 of additional liabilities, approximately 35% of the asserted net worth. *Id.* at 73. The court found that the elements of 11 U.S.C. § 523(a)(2)(B) had been met, including the element of material misrepresentation. Omission of prior secured loans totalling $100,000 for loan of $10,000 was material. *In re Figge,* 94 B.R. 654 (Bankr.C.D.Cal.1988) ($220,000 the difference between actual value $560,000 and represented value $780,000 was material for loan of $200,000). Overstatement of net worth by at least 7% was material. *In re Meyer,* 89 B.R. 25 (Bankr. E.D.Wisc.1988).

### Regarding Financial Condition

It is undisputed that the financial statements were "respecting Defendant's financial condition" as they were personal financial statements purported to represent the net worth and credit worthiness of Defendant. They were supplied to the Bank in contemplation of obtaining a loan. Thus the Court

finds that there exists no dispute as to any material fact regarding this issue.

### Reasonable Reliance

First Tennessee avers that its reliance on Defendant's financial statements was reasonable. Moreover, First Tennessee states that the Bank examined the financial statements, verified listed assets, and based on its investigation coupled with Defendant's historical relationship with the Bank, First Tennessee made the loan. Defendant contends that there was no reliance on the financial statements, but that the loan was made on the strength of the trust relationship between First Tennessee and the Defendant and Defendant's repayment history. Specifically, in Defendant's Response to the motion for Summary Judgment, Defendant makes the following argument: [16]

> The case of *In re Reeds,* 145 B.R. 703 (Bkrtcy., N.D.Okl.1992), was a case in which a creditor objected to the discharge of its debt against a Chapter 7 debtor on the ground of false statement of financial condition. At page 707 of that opinion, the Court stated:
>
> > The issue of reasonable reliance is divided into two parts. First, there must be actual reliance on the materially false representations and second, this reliance must be reasonable. To establish actual reliance, the creditor must show its reliance on the false financial statement was "a contributory cause of the extension of credit" and "that credit would not have been granted if the lender had received accurate information."
>
> No where in the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, is there proof that plaintiff's reliance on the allegedly false financial statement was a contributory cause of the extension of credit or that credit would not have been granted if the lender had received accurate information. (sic) There is therefore a genuine issue as to these material facts.
>
> That same case went on to discuss reliance at page 707 and states as follows:

16. The Court has set forth relevant portions of the Defendant's Response verbatim as this was the only evidence offered by Defendant to overcome the Motion for Summary Judgment.

Whether or not reliance was reasonable is a *factually sensitive inquiry....* The inquiry can involve such things as the amount and adequacy of the information given or requested, the nature and circumstances of the loan, the past relationship, if any, between creditor and debtor, the amount of the loan itself, the sophistication of the lender, its normal lending practices and the custom of the industry.

The court is keenly aware of the tensions that exist within Section 523(a)(2)(B). Its requirement of reasonable reliance must not become a vehicle by which the courts, having the benefit of 20/20 hindsight, second guess a creditor's loan policies or the wisdom of its lending decisions. At the same time, however, "it is not our business to bail out any lender no matter how recklessly it gives out its money."

Other genuine issues as to the plaintiff's reliance upon the defendant's alleged false financial statement are revealed by the plaintiff's answers to the defendant's first set of interrogatories. In those interrogatories, the plaintiff was asked to describe what written documents were considered in approving said loans. The plaintiff's response was that it considered at least 73 separate documents in approving the loans which were directly to the defendant or which the defendant guaranteed.

Defendant believes there is a genuine issue as to a material fact as to whether or not the loans to the defendant and the loans to I.B.N. guaranteed by the defendant were made on the basis of the proof of the financial statement of the defendant or whether they were made on the basis of the defendant's prior history with the bank in repaying over $200,000 in loans, or the defendant's earning's history.

No where in any of the pleadings, depositions, answers to interrogatories, and admissions is there proof that the plaintiff would not have made the loans or granted extensions of the loans or consolidated any loans had it known that the defendant's liabilities were greater than set out in his numerous financial statements. (sic)

In *Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163 (6th Cir.1985), the United States Court of Appeals for the Sixth Circuit held that the "reasonableness" requirement is not "a rigorous requirement, but rather is directed at creditors acting in bad faith," noting however that Congress did intend that there be some verification of financial information provided by debtors. *See also, In re Walton,* 158 B.R. 948 (Bankr. N.D.Ohio 1993). In the instant case, accurate verification of much of the omitted liability information would have been difficult. In *BancBoston Mortgage Corp. v. Ledford (In re Ledford),* 970 F.2d 1556 (6th Cir.1992), the court enumerated objective standards upon which to determine whether a lender's reliance was reasonable. The factors are:

(1) whether the creditor had a close personal relationship or friendship with the debtor;

(2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust;

(3) whether the debt was incurred for personal or commercial reasons;

(4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representation relied upon were not accurate; and

(5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Id.* at 1560 (citations omitted). [First Tennessee's Memorandum of Law]

Based on the *Ledford* factors, the affidavit of John Gauldin, and the nature and extent of the undisclosed liabilities, and based on Defendant's testimony in his 2004 Examination that the false financial statements were submitted to First Tennessee for the purpose of obtaining a loan, the Court finds from the totality of the evidence that there is no material issue as to the fact of First Tennessee's reliance on the financial statement. Similarly, given the history of the trust relationship between these parties, and the sophistication of the lender and the borrower, the Court finds that there is no genuine issue of fact as

to the reasonableness of First Tennessee's reliance.

Defendant insists that a factual issue is evidenced by the Bank's admission that over 73 separate documents were considered in approving loans to Defendant. There is no requirement that the materially false statement be the sole document on which the lender relies but simply that there be reliance on the document. It would be fairly uncommon for a lending institution to base its lending decision on a single document in these times of complex, national and international transactions. Reliance must be examined in light of the facts and circumstances of each case.

As the Court stated in *Bradford, supra,* there must be something more than the hint of a genuine issue of material fact. The nonmoving party must ultimately demonstrate the existence of such a disputed material fact. This Court finds that Defendant has failed to show any genuine issue as to the fact of First Tennessee's reliance and thus the Court grants judgment for First Tennessee on the issue of reliance. In the face of a properly supported motion for Summary Judgment, Defendant has offered no affidavits, no documents, no controverting proof in any form other than his answer to the complaint.

### Intent to Deceive

■ Plaintiff contends that as a matter of law, Defendant provided the Financial Statements to First Tennessee with an intent to deceive. The Sixth Circuit has held that the "intent to deceive" does not require a showing of "subjective intent to have another person rely on financial statements." *Investors Credit Corp. v. Batie (In re Batie),* 995 F.2d 85, 90 (6th Cir.1993). Instead, "the standard ... is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied." *Bank One v. Woolum (In re Woolum),* 979 F.2d 71, 73 (6th Cir.1992) (citing *In re Martin,* 761 F.2d at 1167); *See also, In re Liming,* 797 F.2d 895 (10th Cir.1986).

The facts of *In re Woolum* are very similar to the facts in the instant case. Before obtaining credit from the lender, the debtor submitted a financial statement that did not list contingent liabilities of approximately $463,000. Thereafter, the debtor submitted three more financial statements which, like the first, substantially failed to list his contingent liabilities. At the trial of the lender's § 523(a)(2)(B) action, the debtor testified (1) that he thought part of the claim against him was a "mistake" and (2) that "he had forgotten" about one of the guaranties he had executed. *Id.* at 73. The *Woolum* court rejected testimony from the debtor that he had "forgotten" about his unreported liabilities.

The Defendant in the instant case similarly states that he forgot to include the various liabilities. (*See* Transcript p. 75, 86–87). The magnitude of Defendant's unreported liabilities are so great, that they cannot be charged to a lapse of memory. Defendant is a physician, and a businessman with sufficient education and an appreciation of financial transactions. It would severely strain credulity to accept Defendant's explanation as to his failure to disclose these liabilities.

Grossly reckless conduct on the part of a debtor in a written financial statement satisfies the requisite intentional deception of Section 523(a)(2)(B). *See, In Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490 (6th Cir.1986); *In re Batie, supra.*

### CONCLUSION

Based on the foregoing consideration of the pleadings, affidavits, exhibits, applicable case law, and the case record as a whole, and based on the absence of proof by Defendant, summary judgment is granted in favor of First Tennessee as to its complaint seeking the nondischargeability of its particular debt. In response to the motion, Defendant has set forth no facts to refute those proffered by First Tennessee. The bare denials in the Answer are insufficient to create a genuine issue such to overcome a Motion for Summary Judgment. Once the facts are put forth by the movant, it is incumbent upon the nonmoving party to set forth sufficient facts to evidence a genuine issue. A bare assertion that the facts are not true is simply insufficient. *See, Street v. J.C. Bradford, supra.*

Based on the foregoing, summary judgment is granted in favor of the plaintiff.

**IT IS SO ORDERED.**